UNITED STATES of America,
Plaintiff,

v.

Carlos CAMACHO–SANTIAGO
[14], Defendants.

Criminal No. 12–413 (FAB).

United States District Court,
D. Puerto Rico.

Signed Feb. 25, 2014.

Maritza Gonzalez–Rivera, Myriam Y. Fernandez–Gonzalez, Olga B. Castellon–Miranda, United States Attorneys Office, San Juan, PR, for Plaintiff.

Edgar R. Vega–Pabon, Vega Pabon Law Office, P.S.C., San Juan, PR, for Defendants.

## MEMORANDUM AND ORDER

BESOSA, District Judge.

Before the Court is defendant Carlos Camacho–Santiago's motion *in limine,* seeking to exclude the testimony of two government witnesses. (Docket No. 1128.) After reviewing the defendant's motion and the government's response (Docket No. 1196), the Court **HOLDS IN ABEYANCE** defendant's motion *in limine.*

## I. Discussion

Two government witnesses testified before the grand jury in this case regarding their knowledge of Camacho. Camacho now seeks to exclude the witnesses' anticipated testimony at trial, arguing that the testimony is inadmissible. The Court turns to each item of proposed exclusion.

### 1. Javier Olmo–Rivera's Prior Bad Acts Testimony

First, Camacho seeks to exclude testimony from government witness Javier Olmo–Rivera that he knew Camacho from the 1990s because Camacho worked in "drug trafficking in Ciales, with Tuntún." (Docket No. 1128 at pp. 1–2.) Camacho contends that the evidence is inadmissible pursuant to Federal Rule of Evidence 404(b) because it consists of evidence of past crimes or acts offered to prove Camacho's actions in conformity with these past crimes or acts. *See* Fed.R.Evid. 404(b)(1). The government argues that the contested testimony is evidence of opportunity, intent, plan, preparation, knowledge and/or absence of mistake or accident, and is accordingly not barred by Rule 404(b). *See* Fed.R.Evid. 404(b)(2).

■ The First Circuit Court of Appeals has adopted a two-part test for determining the admissibility of Rule 404(b) evidence. *United States v. Trenkler,* 61 F.3d 45, 52 (1st Cir.1995). First, the Court "must determine whether the evidence has some 'special relevance' independent of its tendency to simply show criminal propensity." *Id.* (internal citations omitted). Second, the Court "must then carefully conduct a Rule 403 analysis to determine if the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice." *Id.* (internal citation omitted). The government contends that the "special relevance" of the evidence is that if the government can establish through Olmo's testimony that Camacho dealt drugs in 2007,[1] it tends to make it more probable that Camacho participated in a drug distribution conspiracy during the time charged in the indictment. (Docket No. 1196 at p. 3.) On this point, the government misses the mark. The government's proffered "special relevance" is merely relevance; it indicates that the evidence is being offered for precisely the purpose that is prohibited by Rule 404(b)—to show that Camacho in this case acted in conformity with his prior bad acts. Because the government has not offered any "special relevance" that would remove Olmo's testimony from the ambit of Rule 404(b)'s prohibition of propensity evidence, and because the Court has no factual basis from which to infer it, the Court's 404(b) inquiry ends here. The Court does not, at this time, address Rule 403's applicability to the contested evidence. The Court **HOLDS IN ABEYANCE** Camacho's motion *in limine* to exclude Olmo's prior bad acts testimony until such time as a factual basis has been presented upon which the Court can rule.

### 2. Arnaldo Sierra–Meléndez's Identification Testimony

■ Second, Camacho seeks to exclude testimony by government witness Arnaldo Sierra–Meléndez regarding an alleged incident in 2007 or 2008 in which members of "the organization" confronted him regarding the loss of nineteen kilograms of cocaine. Sierra testified before the grand jury that during the confrontation an individual nicknamed "Gemelo,"[2] whom he had not seen before, put a pistol to his head and threatened to kill him if he did not identify the person who had stolen the missing cocaine. (Docket No. 1128 at pp. 2–3.) During his grand jury testimony, Sierra did not identify "Gemelo" from a photograph or describe his physical traits. Camacho contends that the Jencks materials disclosed by the government reveal that Sierra was never presented with a photo array. Any effort to complete an

---

1. There is some confusion regarding the precise timing of Olmo's allegations regarding Camacho's participation in drug trafficking with Tuntún. Camacho, in his motion *in limine,* quotes Olmo's testimony as referring to activities in the 1990s. (*See* Docket No. 1128 at pp. 1–2.) The government at one point in its response refers to Olmo's testimony as referencing activity in 2007, within the time-frame identified in the indictment, (Docket No. 1196 at p. 3), and at another point refers to drug trafficking "close to the timeframe" of 1999, the start of the indicted activity. *Id.* at p. 6. If Olmo's testimony is related to 2007 drug deals encompassed in the indictment in this case, it may not consti-

tute prior bad act evidence, which would render this inquiry moot. If, however, Olmo's testimony relates to alleged activities of Camacho prior to and outside the scope of the indictment, it constitutes prior bad act evidence, and is accordingly impacted by this opinion. Because the bulk of the parties' arguments focus on alleged drug trafficking in the 1990s, prior to the time-frame of indicted conduct, the Court will proceed to analyze the evidentiary issues as prior bad acts pursuant to Rule 404(b).

2. Gemelo is Camacho's alias.

identification at trial, he argues, would be unreliable and inadmissible in violation of Camacho's right to due process of law pursuant to the Fourteenth Amendment of the U.S. Constitution. *See, e.g., Manson v. Brathwaite,* 432 U.S. 98, 114, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977); *Neil v. Biggers,* 409 U.S. 188, 199, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972).

The Government contends that Sierra was shown a series of photographs of his co-conspirators, but he was not shown a photograph at the time of his testimony in 2009. The government attached to its response excerpts of a report indicating that Sierra described "Gemelo" in 2009 as a "white Hispanic male, approximately 5'11", brown hair, brown eyes, and heavy set." (Docket No. 1196–1.) The government disclaims any intention of introducing an out-of-court identification of the defendant; rather, it seeks only to introduce Sierra's in-court identification of the defendant.

Courts apply a two-prong test to determine the admissibility at trial of out-of-court and in-court identifications. *Simmons v. United States,* 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968). First, the Court must determine whether the identification procedure was impermissibly suggestive. *United States v. Maguire,* 918 F.2d 254, 263 (1st Cir.1990). Second, if a photospread is deemed impermissibly suggestive, the Court must then measure "the reliability of the identification based on the totality of circumstances according to a five-point index delineated in *Neil v. Biggers,* 409 U.S. 188, 189–200, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972) (witness's opportunity to view the suspect, degree of attention, accuracy of prior description, level of certainty, and time lapse between crime and identification)." *Id.* (internal citations omitted). The same general test is applied to in-court identifications subsequent to suggestive out-of-court identifications. *Id.*

at 264. "In other words, in-court identification testimony is admissible *unless* its basis, the pre-trial identification, has proven so impermissibly suggestive as to give rise to a very substantial likelihood of misidentification." *Id.* (citing *Biggers,* 409 U.S. at 198, 93 S.Ct. 375).

Though the Court does not have information regarding the out-of-court identification procedure, it can infer from the government's arguments that one photograph was shown to the witness. The government argues that this does not render the identification impermissibly suggestive because Sierra and Camacho knew each other subsequent to the interaction about which Sierra testified. Beyond this, however, the Court does not have a factual basis at this time to assess the totality of the circumstances surrounding a future in-court identification, and accordingly **HOLDS IN ABEYANCE** Camacho's motion *in limine* as to Sierra's in-court identification testimony.

### 3. Jencks Act Material

Camacho claims that the government's Jencks disclosures do not indicate that Sierra participated in a photo array or any sort of identification of Camacho. The government responds that "the government did show witness Sierra Melendez a series of photographs of his co-conspirators," (Docket No. 1196 at p. 10), but does not indicate when this photo array took place or whether the witness's descriptions or identifications were included in the Jencks disclosures. The government is accordingly **ORDERED** to inform the Court why Sierra's descriptions and identifications do not constitute Jencks material pursuant to 18 U.S.C. § 3500 by 12:00 noon on February 26, 2014.

## II. Conclusion

For the reasons state above, the Court **HOLDS IN ABEYANCE** Camacho's mo-

tion *in limine* and **ORDERS** the government to inform the Court why photographic identifications by Sierra do not constitute Jencks material by **12:00 noon on February 26, 2014.**

**IT IS SO ORDERED.**